UNITED STATES of America

v.

Michael R. CROTCHETT, Lance Corporal (E–3), U.S. Marine Corps.

NMCCA 200800770.

U.S. Navy–Marine Corps Court of Criminal Appeals.

12 May 2009.

BOOKER, J., delivered the opinion of the Court in which O'TOOLE, C.J., GEISER and VINCENT, S.JJ., and KELLY, PRICE, and STOLASZ, JJ., concur. MAKSYM, J., filed an opinion dissenting in part and concurring in the result joined by COUCH, S.J.

For Appellant: LCDR Paul Bunge, JAGC, USN.

For Appellee: Dale Saran; Capt Sridhar Kaza, USMC.

## PUBLISHED OPINION OF THE COURT

BOOKER, Judge:

In *United States v. Neal,* 67 M.J. 675 (N.M.Ct.Crim.App.2009), which presented a challenge of first impression to the revised Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920, we granted a Government appeal and reversed the trial court's ruling that the combination of Article 120(e) and Article 120(r) and (t), UCMJ, denied accused service members due process.

Today we are faced with another due-process challenge to the statute. Under Article 62, UCMJ, 10 U.S.C. § 862, the United States has appealed the trial judge's ruling that "prosecution of an alleged aggravated sexual assault under § 920(c)(2)(C) violates the accused's Fifth Amendment right to due process by unconstitutionally shifting the burden of proof to the accused to disprove an essential element of the offense." Appellate Exhibit XVIII at 15. In a Government appeal under Article 62, we are limited to correcting errors of law, and we consider those errors *de novo. See, e.g., United States v. Davis,* 62 M.J. 533, 536 (N.M.Ct.Crim.App. 2005), *aff'd on other grounds,* 63 M.J. 171 (C.A.A.F.2006). *See also* Art. 62, UCMJ.

Our ruling in *Neal* addressed the trial judge's erroneous view that Article 120(e), proscribing aggravated sexual contact, con-

tained an implicit element of lack of consent. *Neal,* 67 M.J. at 677. We are again faced with an attack on language limiting the role that consent, or lack of consent, plays in proving whether the offense was committed; this time, however, the attack is directed at whether an accused service member, in asserting an affirmative defense of consent, must disprove whether a victim is "substantially incapable of communicating unwillingness to engage in the sexual act," Article 120(c)(2)(C), in order to be acquitted. We hold that the statute does not require this of an accused.

Appellee Lance Corporal (LCpl) Crotchett was charged with an aggravated sexual assault in violation of Article 120(c), UCMJ. He is alleged to have engaged in sexual intercourse with Private (Pvt) M, who was substantially incapable of communicating unwillingness to engage in that sexual act.[1] The alleged offense occurred in South Carolina around 23 February 2008, well after the effective date of the wholly revised Article 120. At trial, the defense counsel served written notice that LCpl Crotchett would assert the "affirmative defense of consent." After hearing argument on the matter, the military judge dismissed the charge and its specification, ruling that "prosecution of an alleged aggravated sexual assault under § 920(c)(2)(C) violates the accused's Fifth Amendment right to due process by unconstitutionally shifting the burden of proof to the accused to disprove an essential element of the offense." AE XVIII at 15. The "essential element" according to the ruling was the alleged victim's substantial incapability to communicate her unwillingness to engage in the act. *Id.*

The limited record of the proceedings in this case contains in pertinent part the referral order, the charge sheet, a series of proffers from the parties at trial, argument, and the military judge's ruling. There was no evidence offered or admitted regarding the issue before us, and therefore no basis for findings of fact.[2] Conducting a *de novo* review of the military judge's conclusions of law, we conclude that his ruling was influenced by an erroneous view of the law and that it therefore must be reversed.

We begin by noting that, although the military judge in his ruling believed he was considering an "as applied" challenge and appellate defense counsel asserted during oral argument that the present challenge to the statute is both facial and "as applied," we conclude that any "as applied" challenge is, on this record, premature. The trial has simply not proceeded to the point at which this court can assess a constitutional challenge as to how this statute applies to the facts when those facts have yet to be developed at trial. Noting that facial challenges are disfavored, or put another way, "best when infrequent," *Sabri v. United States,* 541 U.S. 600, 608, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), we will limit our analysis to the facial validity of those portions of Article 120 addressed in the military judge's ruling.

The jurisprudential reasons for this position are clear: "Not only do they invite judgments on fact-poor records, but they entail a further departure from the norms of adjudication in federal courts: ... relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand." *Id.* at 609, 124 S.Ct. 1941 (citations omitted). *See also United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)(cautioning, in a First Amendment context, against declaring an act of Congress unconstitutional on the basis of hypothetical cases). For us to sustain the ruling of the trial court, therefore, we would have to find that there is no combination of facts and circumstances that can ever exist that would allow a constitutional interpretation of this statute. *See United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Final-

---

1. We infer from AE XIII that the Government's theory of prosecution was that Pvt M was asleep when intercourse began, and therefore "substantially incapable of communicating" her unwillingness to engage in intercourse with the appellee.

2. There was substantial litigation on other matters before trial, and their resolution is not before us.

ly, we note that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 857, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) (citations and internal quotation marks omitted).

The Government's burden of proof in a prosecution under the challenged subsection of Article 120 is to prove by legal and competent evidence, beyond a reasonable doubt, (1) that the accused engaged in a sexual act with another person, who is of any age, and (2) that the other person was substantially ... incapable of ... communicating unwillingness to engage in the sexual act. Art. 120(c)(2)(C), UCMJ. Significantly, the elements of this offense do not require the Government to prove a lack of consent.[3] The statute rather focuses on the actions of the accused, not the actions or intentions of the alleged victim,[4] and these revisions now relieve the Government from initially having to ask the alleged victim pointed questions about consent.

The revised statute also provides for a designated "affirmative defense":

> Lack of permission is an element of the offense in subsection (m) (wrongful sexual contact). Consent and mistake of fact as to consent are not an issue, or an affirmative defense, in a prosecution under any other subsection, except that they are an affirmative defense for the sexual conduct in issue in a prosecution under subsection (a) (rape), subsection (c) (aggravated sexual assault), subsection (e) (aggravated sexual contact), and subsection (h) (abusive sexual contact).

Article 120(r).

We acknowledge an apparent overlap of defense and Government burdens in prosecutions for aggravated sexual contact in a case where the defense wishes to present a defense of consent or mistake of fact as to consent. A careful reading of the statutory language, however, reveals that this overlap is only apparent, not actual.

If the defense chooses to introduce the notion of consent into the trial, as is permitted (but not required), then the defense bears the burden of satisfying the finder of fact, by a preponderance of the evidence,[5] that the victim used "words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person." Art. 120(t)(14). The plain language of this provision assigns to the defense only the burden of convincing the finder of fact by a preponderance of the evidence of two objective determinations: were the words uttered or the overt acts made? If so, could they indicate freely given agreement? If the answer to either question is "no," the statute additionally allows an honest and reasonable mistake of fact as to the objective determinations (in other words, did the accused honestly and reasonably believe that he heard the words or saw the overt acts, and did he hold an honest and reasonable belief that they indicated freely given agreement?).

The affirmative defense does not require the accused to prove the alleged victim's *actual* agreement, nor *actual* capacity to agree; rather, the accused need only show that the alleged victim objectively manifested consent. The defense bears no burden of demonstrating that the words actually constituted a "freely given agreement" or that they were made "by a competent person." To the contrary, the burden of proof as to the element of the victim's actual capacity is, and always remains, on the Government, and this burden is beyond a reasonable doubt.[6]

---

**3.** These elements in many ways incorporate former explanations of "constructive force" under the predecessor statute, where the Government was required to prove *nonconsensual* sexual intercourse accomplished by force.

**4.** *Cf.* H.R. Rep. 99–594 (1986), U.S.Code Cong. & Admin.News 1986, p. 6186 (legislative history of chapter 109A of title 18, United States Code, on which the revised Article 120 is largely based).

**5.** *See* Art. 120(t)(16), UCMJ. The military judge's ruling was confined to the first of two allocations of burden under this subsection and the interplay with Article 120(c)(2)(C); our resolution of the Government appeal is similarly limited.

**6.** This the Government may do, for example, by showing beyond a reasonable doubt that a victim uttered the words only because a knife was at her throat, or that when she moaned she was actually asleep and troubled by a nightmare.

We return to the point that, notwithstanding the advancement of any particular affirmative defense, the Government always bears the burden in a prosecution under this subsection of proving beyond a reasonable doubt that the sexual act occurred, and that the victim was substantially incapable of communicating unwillingness to participate in the act. If the Government fails in any respect—to prove beyond a reasonable doubt any element, or to disprove beyond a reasonable doubt the existence of a defense—the accused must be acquitted. *See also Martin v. Ohio,* 480 U.S. 228, 234, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987)(evidence creating a reasonable doubt could easily fall far short of a preponderance of the evidence).

Our disposition of this appeal under Article 62 must be read as a narrow one. A facial challenge to Article 120(c)(2)(c) fails because our construction of the statute leads us to conclude it does not mandate a shift to the defense of the burden of proof as to any element. We express no opinion on how this statute might apply to actual facts yet to be developed at trial in any case that may come before us for review under Article 66 or Article 69. We return to the cautionary language in *Raines* about declaring statutes unconstitutional based on hypothetical cases, and we understand the "incontrovertible proposition that it 'would indeed be undesirable for [a] court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.'" *Raines,* 362 U.S. at 21, 80 S.Ct. 519 (quoting *Barrows v. Jackson,* 346 U.S. 249, 256, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), an equal protection case). We decide only the issue before us, namely, whether an accused service member, in asserting the affirmative defense permitted under the statute, must disprove that a victim is "substantially incapable of communicating unwillingness to engage in the sexual act," Art. 120(c)(2)(C), in order to be acquitted. Finding that he need not, we grant the Government's appeal and return the record to the Judge Advocate General for further proceedings not inconsistent with our opinion.

Chief Judge O'TOOLE, Senior Judges GEISER and VINCENT, and Judges KELLY, PRICE, and STOLASZ concur.

MAKSYM, Judge (dissenting in part and concurring in the result).

I dissent. While I concur with the procedural remedy adopted by the majority, I disassociate myself entirely from the substantive rationale for its decision to remand. I conclude that it is premature for this court to determine, within the four corners of the litigation before us whether or not, pursuant to Article 120(c)(2)(C), Uniform Code of Military Justice, 10 U.S.C. § 820(c)(2)(C), an accused service member, in asserting an affirmative defense of consent or mistake of fact as to consent, must disprove whether a victim is "substantially incapable of communicating unwillingness to engage in the sexual act in order to be acquitted." Likewise, I cannot join my brethren in concluding that the appropriate way forward is to consider the constitutional challenge before us as facial in nature. The military judge ruled that the provision in question was unconstitutional "as applied" to the facts of this case, and the pleadings before us similarly aver that this is an "as applied" challenge. As an appeal under Article 62, the majority need go no further than answering the narrow question presented in finding that the military judge erred as a matter of law in concluding, without evidence, that this statute was unconstitutional "as applied." Our rationale for granting the Government's appeal should be based on the absence of a record below, and nothing else.

In contrast to the extremely limited manner in which we addressed this uniquely drafted statute in *United States v. Neal,* 67 M.J. 675 (N.M.Ct.Crim.App.2009), the detail and dicta encompassed within the majority opinion causes this court to run the risk of unintentionally misinforming practitioners that this statute is constitutionally efficacious "as applied." The military judge took the most unusual step of determining, based upon an undeveloped record pretrial, that the statute in question was unconstitutional as applied to those undeveloped facts. This court ought not follow suit and review a statute's constitutionality without the aid of

evidence in the case before it. My concern is that, given the procedural posture of this case, any decision we render—either as an "as applied" or a "facial" challenge—, is nothing more than an advisory opinion at this juncture, and we should "adhere to the prohibition on advisory opinions as a prudential matter." *United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F.2003).

Confirming its advisory nature, the majority opinion relies upon an abstract analysis in its effort to discern the allocation of the burden of persuasion between the parties in its treatment of Article 120(t)(14), UCMJ. Majority Opinion at 715–16. By apparently reading the statute to mean that the accused need not prove actual agreement or actual capacity, the majority suggests that the consent defense and the mistake of fact defense might be construed as one and the same, even though the latter is separately defined within the statute under Article 120(t)(15), UCMJ. Due to the lack of factual development in the record, this logic fails to harmonize the two parts of the statute. *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1983)(it is a court's duty "to give effect, if possible, to every clause and word of a statute").

My primary concern with the constitutional efficacy of this statute rests with the troubling construct of Article 120(t)(16) that allows the Government a chance to rebut an accused's affirmative defense of consent, after the accused has met his burden by a preponderance of the evidence. As in *Neal,* it is the language of this section which requires future constitutional interpretation but is not properly before us under the constraints of this Government appeal. *Neal,* 67 M.J. at 678. I fear that the premature and overbroad action taken by the majority might be misinterpreted as an unintended message to the fleet and Marine Corps that all stands well with this statute even before we have passed constitutional muster over outstanding issues related to Article 120(t)(16). The reality is that only the deployment of the statutory scheme at issue within a contested general court martial, and review under Article 66 will ripen the questions presented for constitutional analysis by this court. Only

then will we be in a position to determine if Article 120(t)(16) constitutes a due process violation. *United States v. Wright,* 53 M.J. 476, 481 (C.A.A.F.2000).

Our analysis of this matter as a facial challenge is both premature and overly broad. I respectfully dissent.

Senior Judge COUCH joining.